UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

JO ELL DELUKE,

an individual,
        Plaintiff,

vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

a corporation,

        Defendant.
_____/

## **COMPLAINT**

The Plaintiff, JO ELL DELUKE, ("Plaintiff" and/or ", MS. DELUKE")
by and through her undersigned attorneys, brings this action for violations of the
Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.*
("ERISA") committed by the Defendant, HARTFORD LIFE AND
ACCIDENT INSURANCE COMPANY, ("Defendant" and/or
"HARTFORD"), relating to the provision of ERISA-governed disability
benefits under the Continental Casualty Company Welfare Benefit Plan ("the
Plan") sponsored by Plaintiff's former employer, Continental Casualty
Company ("CCC"). In support of the relief requested herein, Plaintiff alleges the

following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia,* the investigation made by her attorneys:

### Introductory Statement

1.     This is a civil action for legal and equitable relief seeking redress of violations of ERISA. This suit is brought pursuant to 29 U.S.C. § 1132(a), to secure disability benefits due to Plaintiff through an ERISA welfare benefits plan sponsored by CCC and insured through a group insurance policy issued by Hartford insuring the Plan.

2.     MS. DELUKE seeks any and all benefits to which she may be entitled should this Court determine she is "disabled" under the terms of the Plan. Such benefits include all other available long-term disability benefits, waiver of premium benefits under disability, life accidental death and dismemberment or accident policies issued or administered by Hartford; and any and all benefits available through the Plan, including those managed, administered or underwritten by Hartford.

3.     MS. DELUKE seeks benefits based on the conditions documented in her medical records and other information before Hartford. Ms. DELUKE's disabling physical conditions include chronic pain syndrome, cervical stenosis, cervical radiculopathy, lumbar radiculopathy, arthritis, hypertension, occipital

neuralgia, spinal stenosis, post-laminectomy syndrome, chronic headaches, post-concussion syndrome, and obstructive sleep apnea.

4.     MS. DELUKE was and remains continuously unable to engage in any occupation for which she is qualified by education, training, or experience because of her physical conditions.

5.     HARTFORD approved and paid MS. DELUKE Long-Term Disability ("LTD") benefits, determining that her physical conditions rendered her Disabled from her Regular Occupation. However, HARTFORD abruptly reached a contrary conclusion, asserting that MS. DELUKE was no longer Disabled because of her physical conditions. Instead, HARTFORD alleged that MS. DELUKE's Disability was due to a mental nervous condition, claiming such conditions are limited to 24-months of benefits under the Policy and thereafter, benefits are terminated.

## Jurisdiction, Venue & Parties

6.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 and specifically 29 U.S.C. §1132(e). §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those

terms are defined within 29 U.S.C. § 1001, *et seq.* The Plan "may be found" within this judicial District.

7.     Venue is proper pursuant to 28 U.S.C. §1391 and specifically 29 U.S.C. §1132(e)(2), because an action may be brought in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found.  Both the breach took place and Defendant may be found in this judicial District.

8.     At all times material hereto, MS. DELUKE has been a resident and citizen of the State of Florida, specifically, Volusia County, Florida.

9.     At all times material hereto, MS. DELUKE was an employee of CCC, which is the Plan Sponsor and the entity that HARTFORD issued Long-Term Disability Policy No.: 83174091 (the "Policy") to according to the LTD Certificate.[1]

10.     At all times material hereto, CCC has an office location and can be found in Lake Mary, Florida.

---

[1] Exhibit A was produced by HARTFORD to Plaintiff during the administrative claims process. HARTFORD did not provide Plaintiff with a copy of the Plan.  While Hartford contends that Exhibit A is a true and correct copy of the LTD Certificate, Plaintiff is unaware at this time of whether HARTFORD's assertion is accurate and/or whether the LTD Certificate accurately describes the Plan and/or Policy or is consistent with the Plan terms.

11.     At all times material hereto, MS. DELUKE was a participant, within the meaning of 29 U.S.C. §1002 (7), in the Plan insured by HARTFORD, who does business in the State of Florida.

12.     At all times material hereto, HARTFORD, was the Plan Insurer who issued the Policy to CCC, has an office location, can be found, and is a resident of Hartford, Connecticut.

13.     At all times material hereto, HARTFORD is a foreign corporation that does business by agent or otherwise in all counties in Florida and specifically in Volusia County, Florida.

14.     At all times material hereto, HARTFORD is a "fiduciary" of the Plan as that term is defined by 29 U.S.C. § 1002(21).

15.     At all times material hereto, HARTFORD is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

16.     At all times material hereto, HARTFORD pays claims under the Plan from its own general assets, makes the final determination to pay or deny claims under the Plan, and is a for-profit corporation, and as such operates under an inherent financial conflict of interest in administering claims.

17.    Prior to filing this present action, MS. DELUKE has fulfilled all conditions precedent, including the exhaustion of administrative remedies and/or the exhaustion of such administrative remedies is excused.

## General Allegations

18.    As a participant in the Plan, MS. DELUKE is entitled to receive disability benefits under the Plan if she meets the definition(s) of Disability.

19.    The HARTFORD LTD Certificate provides that the Plan contains the following provisions relevant to a determination of disability:[2]

Occupation Qualifier:

Disability means that during the Elimination Period and the following 12 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

1) continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and

2) not Gainfully Employed.

After the LTD Monthly Benefit has been payable for 12 months, Disability means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and

---

[2] As indicated, HARTFORD did not provide MS. DELUKE with a copy of the Plan.  The LTD Certificate sets forth the aforementioned Definition of Disability.

2) not Gainfully Employed.

OR

Earnings Qualifier:

You may be considered Disabled during and after the Elimination Period in any month in which You are Gainfully Employed, if an Injury or Sickness is causing physical or mental impairment to such a degree of severity that You are unable to earn more than 80% of Your Monthly Earnings in any occupation for which You are qualified by education, training or experience. On each anniversary of Your Disability, We will increase the Monthly Earnings by the lesser of the current annual percentage increase in CPI-W, or 10%.

You are not considered to be Disabled if You are able to earn more than 80% of Your Monthly Earnings. Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income You receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

20.    The Policy states that the Plan provides MS. DELUKE with LTD benefits if she becomes disabled under the terms of the plan.

21.    The LTD Certificate States that the Policy contains the following provision:

The policy does not cover any loss caused by or resulting from:

Disability beyond 24 months after the Elimination Period if it is due to a Mental Disorder of any type. Confinement in a Hospital or institution licensed to provide care and treatment for mental illness will not be counted as part of the 24-month limit.

22.     MS. DELUKE'S pre-disability occupation was as a Telephonic Nurse Case Manager.

23.     On or about May 9, 2019, MS. DELUKE became continuously unable to perform the Material and Substantial Duties of her Regular Occupation and continuously unable to engage in any occupation for which she is qualified by education, training or experience due to her physical conditions: chronic pain syndrome, cervical stenosis, cervical radiculopathy, lumbar radiculopathy, arthritis, hypertension, occipital neuralgia, spinal stenosis, chronic headaches, and obstructive sleep apnea.

24.     Subsequently, MS. DELUKE applied for Short-Term Disability ("STD") benefits with HARTFORD.  HARTFORD approved MS. DELUKE's claim for STD benefits, determining that she was unable to perform the material and substantial duties of her regular occupation. MS. DELUKE received approximately 6 months of STD benefits, the full duration of her eligibility.

25.     On or about July 13, 2019, MS. DELUKE suffered a severe fall, injuring her head, resulting in chronic migraines, dizziness, cognitive impairments, and difficulty finding words. She was diagnosed with post-concussion syndrome.

26.     On or about September 17, 2019, MS. DELUKE underwent a C5-6 and C6-7 anterior approach cervical discectomy and total disk replacement.

Following the surgery, MS. DELUKE went into respiratory failure and was found to by hypercapnic with her oxygen saturation level at 55-60%.

27.    Despite the surgery and ongoing treatment, MS. DELUKE's pain did not subside.   She was subsequently diagnosed with post-laminectomy syndrome, post-concussion syndrome, chronic pain syndrome, cervical stenosis, cervical radiculopathy, lumbar radiculopathy, arthritis, hypertension, occipital neuralgia, spinal stenosis, chronic headaches, cognitive decline, and obstructive sleep apnea.

28.    MS. DELUKE applied for LTD benefits under the terms of the Policy and HARTFORD conducted a comprehensive investigation into MS. DELUKE's eligibility for LTD benefits.

29.    In a correspondence dated November 8, 2019, the Hartford informed MS. DELUKE that it approved her LTD claim based on her medical conditions, explaining:

> Based on the medical information received to date, your medical condition has continued to limit your ability to perform Your Occupation through and beyond the end of the Elimination Period. Therefore, we are pleased to inform you that we have approved your claim.

> According to the information on file, your date of Disability was 5/9/19. Your Elimination Period is satisfied as of 11/6/19 with LTD benefits to commence 11/7/19.

30.     In a correspondence dated February 21, 2020, HARTFORD informed MS. DELUKE that the definition of Disability in the Policy would change after 12 months of LTD benefits to require that MS. DELUKE be continuously unable to engage in any occupation for which she is qualified by education, training, or experience.  HARTFORD informed MS. DELUKE that it was investigating her eligibility for continued benefits.

31.     In a correspondence dated November 30, 2021, HARTFORD informed MS. DELUKE that it determined that she was Disabled due to a mental nervous condition, claiming that the Policy limits benefits for Mental/Nervous conditions to 24 months. HARTFORD advised that it was continuing its review as to whether she was separately disabled by her physical conditions.

32.     MS. DELUKE'S treating specialists informed HARTFORD that MS. DELUKE was unable to engage in any occupation due to her physical conditions.

33.     As part of its investigation into whether MS. DELUKE was Disabled due to her physical conditions, HARTFORD retained MES Peer Review Services to secure a peer review of MS. DELUKE's medical records.

34.     Dr. Chalonda K. Hill, Board Certified Physician in Occupational Medicine, was retained by MES, on behalf of HARTFORD, to conduct a review

of MS. DELUKE's medical evidence and assess whether her physical conditions, alone, rendered her Disabled.

35.    In a medical records review report dated November 19, 2021, Dr. Hill informed HARTFORD:

> [B]ased on review of the medical records provided, the claimant is functionally impaired and requires medically necessary restrictions and limitations.  She is impaired in her ability to sit, stand, walk, carry, push/pull, bend at waist, reach, climb, kneel, stoop, and balance. Due to the chronic nature of her underlying medical conditions and failure to respond to treatment to date it is highly unlikely she will be able to function at a sedentary level.

36.    Despite Dr. Hill's statement (which HARTFORD procured), in a correspondence dated January 12, 2022, Hartford informed MS. DELUKE that it determined that:

> [W]e have concluded that you are not prevented from performing any occupation due to a physical condition beyond 11/7/20.  Therefore, as indicated above, the Mental Nervous Limitation will apply effective 11/7/20.  Benefits are available due to your Mental Nervous conditions for up to 24 months, or through 11/6/22, as long as you continue to meet the policy definition of Disability.

37.    In the January 12, 2022, correspondence HARTFORD informed MS. DELUKE that and if she disagreed with HARTFORD's determination that the 24-month benefit limitation for mental / nervous conditions applied to her claim, she had 180 days to submit an administrative appeal.

38.    On July 8, 2022, Ms. DeLuke timely submitted her administrative appeal and supporting documentation to HARTFORD via facsimile and U.S. mail. Facsimile confirmation sheets confirmed that HARTFORD received MS. DELUKE's administrative appeal and supporting documentation on July 8, 2022 at the facsimile number provided on HARTFORD's January 12, 2022 denial correspondence.

39.    Accordingly, the deadline for Hartford to render a claim decision was August 22, 2022, 45-days after receiving MS. DELUKE's appeal and supporting documentation.

40.    On August 22, 2022, MS. DELUKE's counsel received a letter from HARTFORD dated August 12, 2022, in an envelope with a U.S. postage stamp dated August 18, 2022, stating "We received your appeal request for your client's claim for Long Term Disability benefits on July 12, 2022[3]. Your client's appeal will be assigned to an Appeal Specialist. They may contact you if clarification is needed on your client's appeal."

41.    Therefore, 35 days after Hartford received MS. DELUKE's administrative appeal and supporting documentation and 10 days before

---

[3] As addressed in paragraph 38 herein, HARTFORD received MS. DELUKE's administrative appeal and all supporting documents on July 8, 2022, via facsimile. This was confirmed by facsimile confirmation sheets.

HARTFORD's deadline to render a claim decision, HARTFORD had yet to assign an Appeals Specialist to review Ms. DeLuke's administrative appeal.

42.    HARTFORD did not render a claim decision on MS. DELUKE's appeal on or before August 22, 2022.

43.    On August 23, 2022, MS. DELUKE's counsel received a letter from HARTFORD dated August 17, 2022, in an envelope with a U.S. postage stamp dated August 20, 2022, stating:

> The Employee Retirement Income Security Act of 1974 (ERISA) allows the insurance company 45 days to make an appeal decision unless there are special circumstances that prevent completion of the review in that time period. In such circumstances, the decision period can be extended by an additional 45 days.
>
> We are unable to make a decision on your client's appeal during the initial 45 day period because we have requested an Independent Medical Records review and expect this review to take approximately 2 weeks to be completed. We are continuing our evaluation and will make a decision as soon as possible. The decision should be made prior to October 10, 2022.

44.    As such, 46 days after HARTFORD received MS. DELUKE's appeal and 1 day after HARTFORD's deadline to render a claim decision on MS. DELUKE's appeal, Hartford provided MS. DELUKE with notification that it was unilaterally taking a 45-day extension to have MS. DELUKE's medical documentation reviewed.

45.     Accordingly, MS. DELUKE did not receive notice from HARTFORD that HARTFORD intended to seek an extension of the 45-day appeal claim decision deadline prior to the expiration of the deadline in violation of 29 CFR § 2560.503-1 (1)(i); (3)(i).

46.     Further, not only did HARTFORD fail to provide MS. DELUKE with a timely notice of its intent to extend the claim decision deadline, but HARTFORD also failed to set forth a valid "special circumstance" beyond HARTFORD's control that would justify extending the claim decision deadline in violation of 29 CFR § 2560.503-1 (1)(i); (3)(i).

47.     On August 24, 2022, MS. DELUKE's counsel sent HARTFORD a letter noting that HARTFORD received MS. DELUKE's administrative appeal and all supporting documents on July 8, 2022, via facsimile and provided HARTFORD with copies of the facsimile confirmation sheets.  MS. DELUKE's counsel also indicated that HARTFORD had not provided MS. DELUKE with notice of its intent to take an extension of its claim decision deadline until after the deadline had expired, in violation of 29 C.F.R. §2560.503-1. Further, MS. DELUKE's counsel informed HARTFORD that obtaining a medical records review is not a "special circumstance" beyond HARTFORD's control and thus, HARTFORD had not provided a valid justification for an extension of the claim decision deadline in violation of 29 C.F.R. §2560.503-1.

48.     HARTFORD failed to render a claim decision and provide MS. DELUKE with notice of said decision within the time frames required by the applicable ERISA regulation, and to date, has failed to render a decision and provide Plaintiff with notice of same.

49.     As of the date of the filing of this Complaint, no written decision on MS. DELUKE's appeal has been received from HARTFORD; accordingly, MS. DELUKE is now deemed to have exhausted her administrative remedies under the Department of Labor Regulations and the Plan terms.  *See* 29 CFR § 2560.503-1 (I)(2) (ii).

50.     29 CFR § 2560.503-1 (l) (2) provides that "In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary."

51.     As HARTFORD failed to strictly adhere to all requirements pertaining to the timely issuance of a claim decision in MS. DELUKE's LTD claim, MS. DELUKE's claim for LTD benefits has been deemed denied and Plaintiff has fulfilled all conditions precedent to the filling of this lawsuit.

52.     HARTFORD failed to timely investigate MS. DELUKE's claim and establish and follow reasonable claims procures to ensure a full and fair and timely review of MS. DELUKE's LTD disability benefits claim in violation of 29 CFR § 2560.503-1 (I) (2).

53.     MS. DELUKE has been forced to retain the services of the undersigned attorneys in order to prosecute this action and is obligated to pay a reasonable attorneys' fee.

## COUNT I

### Action to Recover Plan Benefits, Enforce Rights Under the Plan & Clarify Entitlement to Plan Benefits Pursuant to 29 U.S.C. §1132 (a)(1)(B)

54.     Plaintiff, MS. DELUKE, hereby incorporates by reference all of the allegations contained in paragraphs 1 through 53 of this Complaint, as if they were specifically recited herein.

55.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes MS. DELUKE to bring a civil action "to recover benefits due to [her] under the terms

of his plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."

56.     The ERISA Regulations and the terms of the Plan require HARTFORD to reasonably review MS. DELUKE's claim for benefits and provide her with a full and fair review of her claim.

57.     On or about November 7, 2019, MS. DELUKE became eligible for LTD benefits under the terms of the Plan, based on her physical conditions: post-laminectomy syndrome, post-concussion syndrome, chronic pain syndrome, cervical stenosis, cervical radiculopathy, lumbar radiculopathy, arthritis, hypertension, occipital neuralgia, spinal stenosis, chronic headaches, cognitive decline, and obstructive sleep apnea.

58.     Since on or about November 7, 2019, through and including the present, MS. DELUKE remained Disabled under the terms of the Plan based on her physical conditions: post-laminectomy syndrome, post-concussion syndrome, chronic pain syndrome, cervical stenosis, cervical radiculopathy, lumbar radiculopathy, arthritis, hypertension, occipital neuralgia, spinal stenosis, chronic headaches, cognitive decline, and obstructive sleep apnea.

59.     Under the terms of the Plan, if MS. DELUKE is Disabled from a physical condition, the Maximum Period Payable is to Ms. DELUKE's 65th birthday (the year 2032).

60.     Under the terms of the Plan, if MS. DELUKE is Disabled from a physical condition, she is eligible to receive, and HARTFORD is obligated to pay her LTD benefits for as long as she remains physically Disabled through her 65th birthday (the year 2032).

61.     In a letter dated January 12, 2022, HARTFORD informed MS. DELUKE that it determined that she is not Disabled based on "a physical condition beyond 11/7/20" and that HARTFORD would not pay benefits based on her physical conditions.

62.     In the January 12, 2022, correspondence HARTFORD asserted that it determined that "the Mental Nervous Limitation [in the Plan] will apply effective 11/7/20.  Benefits are available due to your Mental Nervous conditions for up to 24 months, or through 11/6/22, as long as you continue to meet the policy definition of Disability."

63.     Accordingly, HARTFORD has determined that the 24-month Mental Nervous limitation in the Plan is applicable to MS. DELUKE's claim and has asserted that benefits will terminate on or before November 6, 2022.

64.     HARTFORD's application of the 24-month Mental Nervous Limitation to MS. DELUKE's LTD claim under the Plan is contrary to the evidence, wrong, unreasonable, and tainted by HARTFORD's financial conflict of interest.

65.    MS. DELUKE has provided HARTFORD and HARTFORD has independently obtained overwhelming and sufficient proof that MS. DELUKE is Disabled based on her physical conditions, establishing that the Mental Nervous Limitation in the Plan is not applicable.

66.    HARTFORD has ignored this information and wrongly denied that MS. DELUKE was and remains Disabled as a result of her physical conditions.

67.    Accordingly, an actual dispute between the parties exists as to MS. DELUKE's rights under the terms of the Plan.

68. MS. DELUKE is entitled to bring this action to enforce her rights under the terms of the Plan, to clarify her rights to future benefits under the terms of the Plan, and to recover benefits due to her under the terms of the Plan.

69. MS. DELUKE has satisfied all conditions precedent under the Plan and is thus eligible to receive benefits as a result of her physical conditions for she has not waived or otherwise relinquished her entitlement to benefits.

70. HARTFORD's, application of the 24-month Mental Nervous Limitation in the Plan and its determination that MS. DELUKE is not Disabled based on her physical conditions was and is contrary to and in breach of the terms of the Plan, and was and is contrary to clear, compelling and substantial medical evidence, vocational evidence, and other evidence and information that supports MS. DELUKE's Disability claim based on her physical conditions.

71. HARTFORD's claim determination is wrong, unreasonable, and tainted by conflict as it is contrary to and in breach of the terms of the Plan, and is based on unfair claims handling including: ignoring relevant evidence, an incomplete review of MS. DELUKE's medical evidence, vocational evidence, and other evidence and information that supports her Disability claim based on her physical conditions; and the failure to fully, fairly and timely evaluate MS. DELUKE's LTD claim based on her physical conditions.

72. HARTFORD failed to timely investigate MS. DELUKE's claim and establish and follow reasonable claims procures to ensure a full and fair and timely review of MS. DELUKE's LTD disability benefits claim in violation of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 (I) (2).

73. As a direct result of Defendant's actions and inactions, MS. DELUKE has incurred significant costs and attorney's fees.

74. Accordingly, Plaintiff, MS. DELUKE, is entitled to recover reasonable costs and attorneys' fees incurred, pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

WHERFORE, Plaintiff, MS. DELUKE, prays that this Honorable Court grant her the following relief:

1)    A declaratory judgment herein declaring:

   a. Plaintiff, MS. DELUKE, is Disabled due to her physical conditions pursuant to the language and within the meaning of the Plan issued and insured by Defendant, HARTFORD;

   b. Plaintiff, MS. DELUKE's, Disability is not subject to the 24-month Mental Nervous Limitation in the Plan;

   c. Defendant, HARTFORD, is obligated to pay Disability benefits to Plaintiff, MS. DELUKE, pursuant to the Plan based on her physical conditions, for as long as she remains physically Disabled through her 65th Birthday, and shall pay all benefits in arrears due and owing, plus interest thereon;

   d. Plaintiff, MS. DELUKE, shall be entitled to recoup all interest, costs, and attorney's fees pursuant to 29 U.S.C. §1132(g)(1); and

   e. Plaintiff, MS. DELUKE, may return to this Court, upon motion, to seek further declaratory relief in the event that it becomes necessary;

2) An award to Plaintiff, MS. DELUKE, for all benefits due her under the terms of the Plan, due and owing at the date of Judgment, plus interest thereon;

3) An award to Plaintiff, MS. DELUKE, of her reasonable costs and attorney's fees pursuant to 29 U.S.C. §1132(g)(1); and

4)      Such other and further relief as this Court may deem just and

proper.


Respectfully submitted this 26th day of August, 2022.

DI LAW GROUP
Attorneys for Plaintiff
3201 W Commercial Blvd
Suit 227
Fort Lauderdale, Florida 33309
Tel: (954) 497-9910
Fax: (954) 989-9999

/s/ Alicia Paulino-Grisham
Alicia Paulino-Grisham
Florida Bar No.: 0676926
E-mail: alicia@dilawgroup.com